UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-cv-00836-MOC

| | | |
|---|---|---|
| **NIKKI T. THOMAS** | ) | |
| | ) | |
| | ) | ORDER |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **NANCY BERRYHILL,** | ) | |
| **Acting Commissioner of Social Security** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the court on the parties' opposing Motions for Summary

Judgment (#11 and #15). The matter is ripe for review. Having carefully considered such

motions and reviewed the pleadings, the court enters the following findings, conclusions,

and Order.

## FINDINGS AND CONCLUSIONS

### I.    Administrative History

Plaintiff applied for supplemental security income in October 2012, alleging that she

became disabled on May 23, 2012. (Tr. 16). Her claim was denied at the initial and

reconsideration levels of review. (Tr. 16).  Plaintiff filed a timely request for a hearing

before an Administrative Law Judge ("ALJ"). A hearing was held before Theresa R.

Jenkins, an ALJ, on February 5, 2015, at which plaintiff had a non-attorney representative

present. (Tr. 16). In an April 15, 2015 written decision, the ALJ denied the plaintiff's claim.

(Tr. 16-27). Plaintiff requested review of the ALJ's decision. (Tr. 10-12). The request for review was denied by the Appeals Council on October 11, 2016 (Tr. 1), rendering the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. § 404.981. Plaintiff has exhausted her available administrative remedies and the case is now ripe for judicial review under Section 205(g) of the Social Security Act. See 42 U.S.C. § 405(g).

## II.   Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.   Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The court finds that the ALJ's decision was supported by substantial evidence.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title XVI pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### C. The Administrative Decision

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since October 30, 2012, which was the claimant's application date. (Tr. 18). At step two, the ALJ found that the plaintiff had the following severe impairments: obesity, osteoarthritis, bilateral carpal tunnel syndrome, patellofemoral arthritis of the left knee, hammertoes, anxiety disorder, and mood disorder. (Tr. 18-19). At step three, the ALJ

determined that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19-21).

The ALJ concluded that the plaintiff had the residual functional capacity (RFC) to perform light work, with several limitations. (Tr. 21). The plaintiff was limited to only occasionally balancing, stooping, kneeling, crouching, crawling, and climbing stairs or ramps. (Tr. 21). She required an assistive device to ambulate and must be allowed to alternate between standing and sitting up to twice per hour. Id. She must also avoid ladders, ropes, scaffolds, unprotected heights, and machinery with dangerous parts. Id. Further, the RFC limited her to only occasional use of the bilateral feet for pushing, pulling, and operating foot controls. Id. She may also frequently, but not continuously, use her bilateral hands for fine and gross manipulations as well as pushing, pulling, and operating hand controls. Id. The RFC further limited her to occasional public contact or interaction, and noted that she could have frequent, but not continuous, contact or interaction with co-workers and supervisors. Id. She was also deemed able to follow short, simple instructions and perform routine tasks, but no work requiring a production rate or demand pace. Id. The RFC also limited her to avoiding work related to crisis situations, complex decision making, or constant changes in a routine setting. Id.

At step four, the ALJ found that plaintiff Thomas could not perform her past relevant work. (Tr. 25). At step five, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that the plaintiff could perform, given her age, education, work experience, and RFC. (Tr. 26-27). Accordingly, the ALJ determined that the plaintiff

had not been under a disability within the meaning of the Social Security Act, 20 C.F.R. 404.1520(g), from the application date October 30, 2012. (Tr. 26).

### D. Discussion

The court has closely read plaintiff's Memorandum of Law (#12) supporting her Motion for Summary Judgment. Plaintiff has made the following assignments of error:

I.      The ALJ erred in applying SSR 96-8p as to plaintiff's nonexertional capacity;

II.     The ALJ erred in relying on testimony that conflicts with the Dictionary of Occupational Terms without appropriate explanation; and

III.    New evidence submitted to the Appeals Council fills an "evidentiary gap"

(#12) at 5-6. Plaintiff's assignments of error will be discussed *seriatim* below.

### 1.    Nonexertional Capacity

Plaintiff asserts the ALJ erred in her assessment of the plaintiff's non-exertional capacity, alleging the ALJ did not make a complete mental RFC assessment as required by SSR 96-8p. (#12) at 6. SSR 96-8p provides that the "[RFC] assessment must include a narrative discussion describing how the evidence support each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p, 61 Fed. Reg. at 34, 475). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted with the medical and other evidence." S.S.R. 96-8p, 1996 WL 37184, at *7. Remand may be appropriate where "an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other

inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2nd Cir. 2013) (per curiam).

Plaintiff's argument is three-fold. First, plaintiff contends that the ALJ did not adequately account for claimant's ability to stay on task. (#12) at 7. Second, plaintiff asserts that the ALJ did not adequately explain what she meant by the social limitations included within the RFC determination. (#12) at 10. Third, plaintiff argues that the ALJ did not adequately explain any effect of the claimant's limitations in the activities of daily living. (#12) at 12.

a. **Ability to Stay on Task**

Plaintiff's first argument relates to the ALJ's accounting of her ability to stay on task. Relying on Mascio, the plaintiff asserts that the ALJ "mistakenly only consider[ed] Thomas' capability to perform routine tasks not Thomas' ability of staying on task." (#12) at 9. The plaintiff correctly notes that the ALJ found that the claimant had moderate difficulty in concentration, persistence, and pace and that the ALJ's RFC determination limited her to routine work. (#12) at 9.

Mascio is plainly distinguishable from the instant case. In Mascio, the claimant was limited to unskilled work and the ALJ largely avoided discussion of that claimant's mental limitations. See Mascio at 637. Moreover, courts within this district have found that Mascio "only requires a remand when an ALJ's opinion is 'sorely lacking' in a manner that 'frustrates meaningful review.'" Ponder v. Berryhill, No. 1:15-CV-00289-RJC, 2017 WL

1246350, at *4 (W.D.N.C. Mar. 31, 2017) (quoting White v. Colvin, No. 3:15-cv-197-FDW, 2016 WL 3381265, at *5 (W.D.N.C. June 14, 2016)).

Here, the ALJ discussed the mental aspects of the RFC in great detail, such as the detailing of plaintiff's normal mood and affect and normal mental status examinations. (Tr. 24). Moreover, plaintiff's mental difficulties were not related to staying on task but instead related to stress. As noted by the ALJ, "claimant reported no problems paying attention, finishing what she starts, following instructions, or handing changes in routine, but she reported difficulty in handling stress." (Tr. 20). Plaintiff was also described as having "good attention" during an examination. Id.

The ALJ cited to numerous Exhibits in discussing the plaintiff's mental impairments. (Tr. 24, citing Exhibits B4F, B6F, B7E, B9F, B12F, B13F, and B14F). Her analysis noted that claimant suffered from mood disorder and anxiety disorder. She accommodated these mental impairments and the mental limitations regarding stress in the eventual RFC determination. (Tr. 21, 25).

Meaningful review is not frustrated here. The ALJ has adequately shown their work as to how she reviewed the record and based her RFC findings upon evidentiary support.

b. **Social Limitations**

Plaintiff next argues that the ALJ did not adequately explain what she meant by the social limitations within the RFC determination. Plaintiff contends that the ALJ did not

explain what she meant by "contact or interaction" with workers or supervisors and did not discuss interaction with supervisors. (#12) at 10-11.

Fundamentally, the ALJ does not need to use the exact words to convey his or her meaning. Just because an ALJ may use the term "authority" may also indicate that she is discussing those with supervisory authority as well as others with authority over the claimant. Such is the case here.

The plaintiff argues that the ALJ failed to "discuss Thomas' ability to interact with supervisors at all." (#12) at 11. The ALJ's determination reveals that the ALJ took into account claimant's moderate difficulties with social functioning. (Tr. 20). The ALJ wrote that "claimant reported no problems getting along with others or **authority**, and she reported that she is only limited in social activities by her physical impairments." (Tr. 20) (emphasis added). The ALJ further noted an examination that found hypersensitivity to social opinion, weakening impulse control, and tendency to act out aggressively. (Tr. 20).

In fashioning the RFC determination about claimant's mental impairments, the ALJ noted that the claimant "reported and testified that she has very few symptoms or limitations and that her medications are effective." (Tr. 24). The ALJ noted a conflict in the evidence between normal mood and affect and normal mental health status examinations compared to evidence that claimant suffers from anxiety disorder and mood disorder. Judicial review is possible as the ALJ showed her work by noting the conflict and fashioning an RFC that incorporated the claimant's mental limitations.

The court cannot grant summary judgment because the ALJ discussed the plaintiff's ability to interact with "authority" rather than with her "supervisors." The ALJ took into account the plaintiff's moderate limitations in social functioning, and specifically any issues with getting along with others and with authority (i.e. supervisors), when the ALJ fashioned the RFC limitations related to contact or interaction with co-workers and supervisors.

Plaintiff argues that she is left to guess as to what level of interaction or contact is appropriate. For example, plaintiff argues that the ALJ should have spelled out exactly how co-workers and supervisors are to "contact or interact" with the plaintiff in a work setting. (#12) at 10. The plaintiff asks whether the ALJ meant that "contact or interaction" should be face-to-face, in the same room, in the same area, on the telephone, via email, or via text. (#12) at 10. The plaintiff cites no legal authority for the proposition that the ALJ has to do more than explain and discuss claimant's ability to "interact independently, appropriately, effectively, and on a sustained basis with other individuals." (#12) at 10. Put another way, the ALJ does not have a legal duty to articulate every conceivable way that one can "contact or interact with" the public, colleagues, or supervisors. Moreover, plaintiff does not point to a case describing such a duty, other than a general duty that an ALJ show their work.

Ultimately, the role of the court in cases like this is not to re-weigh the evidence or conduct a *de novo* review. Instead, the court asks whether the ALJ based his or her

determination upon substantial evidence. Here, she did so and explained her reasoning sufficiently as to facilitate judicial review.

### c. Limitations in the Activities of Daily Living

Plaintiff next argues that the ALJ did not adequately discuss the effect, if any, that Thomas' moderate restrictions on the activities of daily living would have upon her work activity. (#12) at 12. While plaintiff makes this argument, the court has reviewed the ALJ's opinion which discussed the plaintiff's limited daily activities within the discussion of plaintiff's RFC. See (Tr. 23). In the ALJ's discussion of plaintiff's activities of daily living, the ALJ cited four Exhibits and also noted that the plaintiff worked for a significant time with at least some of her impairments. (Tr. 23-24, citing Exhibits B4E, B6E, B7F, B9E).

In the ALJ's step three analysis, the ALJ further reviewed and considered the plaintiff's limitations in the activities of daily living. (Tr. 19-20). The ALJ found that, among other things, the plaintiff was taking care of two children and mopping. (Tr. 20).

Here, it is clear that the ALJ reviewed the record with regard to the plaintiff's limitations in the activities of daily living. In both the step three and RFC analysis, the ALJ adequately considered plaintiff's limitations in such activities and tailored her determination thereto. Put another way, the ALJ has adequately "shown [her] work." See Patterson v. Commissioner of Social Security, 846 F.3d 656, 663 (4th Cir. 2017).

### 2. Conflict with the Dictionary of Occupational Terms

The plaintiff asserts that the ALJ has failed to resolve an apparent conflict between the jobs identified by the vocational expert and the Dictionary of Occupational Terms. (#12) at 15. In particular, the plaintiff argues that the jobs identified by the vocational expert require the ability to follow detailed instructions while the ALJ limited the plaintiff to following short, simple instructions. (#12) at 15.

This court has previously held that "there is no direct correlation between the DOT's reasoning levels and a limitation to carrying out simple instructions or performing simple work; thus, jobs requiring an individual to perform such work is consistent with a DOT reasoning level of either 2 or 3." Carringer v. Colvin, No. 2:13-CV-00027-MOC, 2014 WL 1281122, at *3 (W.D.N.C. Mar. 27, 2014). Such a finding is consistent with other courts that have found that even level 3 reasoning is not inconsistent with the ability to do only "simple" work. Terry v. Astrue, 580 F.3d 471, 478 (7th Cir.2009); Clontz v. Astrue, No. 2:12-cv-12-FDW, 2013 WL 3899507, at *5 n. 6 (W.D.N.C. Jul.29, 2013).

Here, the ALJ provided an RFC limitation that the plaintiff could follow short, simple instructions. The plaintiff argues that the occupations listed require level 2 reasoning. (#15) at 15. Given prior holdings in Carringer and Clontz, level 2 reasoning is not inconsistent with the ability to do simple work. Accordingly, conflict—actualized or apparent—is lacking in the instant case.

3. **New Evidence**

Plaintiff asserts that new evidence was submitted to the Appeals Council that fills "evidentiary gaps" and contradicts the ALJ's findings. (#12) at 16. Specifically, the

plaintiff argues that new records show that the plaintiff was capable of working "in a sitting type capacity" and unable to "walk on a job standing on her feet most of the time." (#12) at 17.

Plaintiff writes that that the ALJ "did not include any standing or walking restrictions in the residual functional capacity." The ALJ's decision differs with plaintiff's reading thereof. The ALJ's RFC finding including that the plaintiff use an assistive device to ambulate and must be allowed to alternate between standing and sitting up to twice per hour. (Tr. 21). In addition to a limitation to performing light work, it would appear that the ALJ properly weighed the record evidence and incorporated it into the RFC any issues with sitting, standing, and ambulation.

Plaintiff relies upon Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011) for the proposition that "evidentiary gaps" exist when no fact finder has made any finding as to the new evidence or attempted to reconcile the new evidence with other evidence. (#12) at 17. The plaintiff includes a block quote from Meyer, which notes that further analysis "is particularly helpful when the new evidence constitutes the only record evidence as to the opinion of the treating physician." (#12) at 17, citing Meyer at 706.

Here, there is no "evidentiary gap." The ALJ reviewed treatment records from the treating physician who submitted the purportedly "new" evidence. See (Tr. 22-23, citing Tr. 409-481). The records submitted relate to the plaintiff's impairments with her left leg and are cumulative to the extant record, which the ALJ adequately reviewed. Unlike in Meyer, the ALJ here had the opportunity to review treatment records from the same

treating physician concerning the same or similar impairment. Accordingly, plaintiff's request for remand cannot be granted on this basis.

## V.    Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignment of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra at 401, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED;**

(2) plaintiff's Motion for Summary Judgment (#11) is **DENIED;**

(3) the Commissioner's Motion for Summary Judgment (#15) is **GRANTED;** and

(4) this action is **DISMISSED.**

Signed: August 21, 2017

Max O. Cogburn Jr.
United States District Judge